**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | * | |
| COMMISSION, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. WMN-08-0984 |
| | * | |
| MCCORMICK & SCHMICK'S SEAFOOD | * | |
| RESTAURANTS, INC. and MCCORMICK | * | |
| & SCHMICK RESTAURANT CORP. | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM AND ORDER**

On August 30, 2011, Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a Motion to Compel Document Production and Interrogatory Answers [ECF No. 50] in this race discrimination case against Defendants McCormick & Schmick's Seafood Restaurants, Inc. and McCormick & Schmick Restaurant Corporation ("Defendants" or "M&S"). The original motion to compel and responsive filings were exchanged by the parties in the fall of 2008. As a result, when EEOC filed its instant motion listing the currently disputed issues but attaching the documents prepared in 2008, Defendants were permitted an opportunity to file an updated opposition.[1]   [ECF No. 59]. This case has been referred to me for the purposes of resolving discovery disputes. [ECF No. 51]. No hearing is deemed necessary. Local Rule 105.6 (D. Md. 2011). For the reasons set forth herein, EEOC's motion will be GRANTED IN PART and DENIED IN PART.

---

[1] For ease of reference, EEOC's 2011 Motion to Compel will be abbreviated "Mot." Defendants' 2011 Opposition to the Motion to Compel will be abbreviated, "Opp." The documents exchanged in 2008 and filed as attachments in 2011 will be "2008 Mot.", "2008 Opp.", and "2008 Reply."

All of the issues presented in this motion relate to the appropriate scope of discovery. Federal Rule of Civil Procedure 26(b)(2)(C) requires this Court to balance various factors to determine the reasonable extent of discovery in a given case.   Those factors include the importance of the discovery sought to the moving party, and the cost and burden to the producing party. "The court is given great flexibility to order only that discovery that is reasonable for a case, and to adjust the timing of discovery and apportion costs and burdens in a way that is fair and reasonable." *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 37-38 (D. Md. 2000).   Where a party objects to discovery on the grounds of unreasonable burden or expense, that party must provide a particularized factual basis for the objection.   *See* Fed R. Civ. Proc. 26(b)(5); Discovery Guideline 9(c), Local Rule App. A.    Conclusory assertions of burden or cost are insufficient.   *See Tucker v. Ohtsu Tire & Rubber Co.,* 191 F.R.D. 495, 498 (D. Md. 2000) (citing *Coker v. Duke & Co.,* 177 F.R.D. 682, 686 (M.D. Ala. 1998); *Jackson v. Montgomery Ward & Co.,* 173 F.R.D. 524, 528–29 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence")).

EEOC's 2008 motion to compel cited specific alleged deficient responses to enumerated requests for production of documents ("RFPs").   The 2011 motion to compel instead cites particular categories of documents EEOC believes to be missing from Defendants' production as a whole, and then cites to the RFPs that EEOC believes include requests for such documents. For ease of review, this Court will address each of EEOC's twelve "issues" in the same order they are presented in EEOC's 2011 motion to compel.

Before turning to the individual issues, however, it is worth addressing one specific RFP which is cited repeatedly in EEOC's 2011 Motion as a basis for ordering further discovery to be provided.  RFP No. 21 asks Defendants to, "[p]roduce any and all documents related to any of the claims, defenses, allegations, denials, or contentions in this action."  That request provides no specifics describing the documents sought, and seems expressly tailored to allow EEOC, at any point in the litigation, to contend that the documents it now wants fall within RFP No. 21's unrestricted scope.  In fact, for almost every category of documents EEOC now seeks, EEOC cites RFP No. 21 as requiring production of those documents.  Because requests for production "must describe with reasonable particularity each item or category of items to be inspected," Fed. R. Civ. P. 34(b)(1)(A), RFP No. 21 fails that standard.  Therefore, RFP No. 21 will not be considered in the analysis of each specific issue below.

Where further production or review of documents is ordered, any such information shall be subject to the confidentiality order filed in this case [ECF No. 24].  All discovery ordered herein will be completed within 45 days, unless an extension for good cause is sought from this Court.

### 1.        Reports and analyses of hiring, or other EEO analyses

EEOC seeks "reports and analyses of hiring, or other EEO analyses, pertaining to the two Baltimore restaurants at issue in this litigation (Units 41 and 66) conducted for purposes of consent decree compliance monitoring in the *Wynne v. McCormick & Schmick's Seafood Restaurants, Inc.* matter that was resolved in the Northern District of California in mid-2008." Mot. at 1.  EEOC contends that those documents are responsive to RFPs Nos. 1, 2, and 21.[2]

---

[2] RFP No. 21 was addressed above.  The other two RFPs read as follows:

Although RFP Nos. 1 and 2 are relatively broad, EEOC's current request is quite specific. EEOC alleges that certain analyses were prepared for purposes of consent decree compliance monitoring in a case resolved in the Northern District of California. If such analyses were prepared, they should be relatively easy to locate and produce. If those analyses contain demographic information about employees of or applicants to the two Baltimore restaurants, then they are responsive to RFPs 1 and 2 and must be produced. If they do not contain that demographic information, then they need not be produced. If the parties are unable to determine whether or not responsive demographic information is contained in the analyses, then the analyses should be submitted to this Court for that determination to be made.

### 2.     Documentation concerning complaints of race discrimination

EEOC seeks, "[a]ny documentation concerning complaints of race discrimination, or complaints by Black employees of unfair treatment, regarding the two Baltimore restaurants at issue in this litigation that was maintained in the files of human resource managers Judith Welch and Sam Hunter, or received via Defendant's electronic internal complaints database, EthicsPoint." Mot. at 3. Defendants submit that they have already produced responsive complaints filed by Calvin Lambert and Cris Robinson, and they further contend that RFP Nos.

---

(1) Produce any and all documents related to any and all persons who worked at/or were selected to work at either or both of Defendants' Baltimore, Maryland restaurants at any time during the period January 1, 1997 to present, including but not limited to personnel documents, payroll and other remuneration and earnings documents, applications, resumes, cover letters, interview notes, complaints, notes of complaints, documents recording demographic information about such persons, or any other documents related in any way to such persons.

(2) Produce any and all documents related to any and all persons who applied for, or otherwise sought, employment at either or both of Defendants' Baltimore, Maryland restaurants at any time during the period January 1, 1997 to present, including but not limited to applications, resumes, cover letter, interview notes, applicant logs, documents recording demographic information about such persons, or any other documents related in any way to such persons.

12 and 17 are "overbroad and amorphous." [3]   While the original RFPs may have been overbroad, EEOC's current request is narrowly tailored.   It identifies the files of two specific supervisory employees and one electronic database to be searched.   The fact that Defendants have produced documents relating to discrimination claims filed by Mr. Lambert and Mr. Robinson does not vitiate their obligation to provide documents relating to other discrimination claims if, in fact, such responsive documents exist.   Defendants have not produced any factual basis to suggest that searching EthicsPoint and the HR files maintained by Ms. Welch and Mr. Hunter would be overly burdensome.   For that reason, Defendants will produce any responsive documents.

### 3.        Point-of-Sale Data

EEOC seeks, "Point-of-Sale data that identifies the table number from which a server received a sale/order."   Mot. at 3.   EEOC avers that the request is responsive to RFP No. 3, which requests in relevant part,

> Produce any and all documents setting forth, describing, or otherwise related to employee table, section, banquet and/or other front-of-house work assignments regarding either or both of Defendants' Baltimore, Maryland restaurants during the period January 1, 1997 to the present,

and RFP No. 4, which requests,

---

[3] The RFPs in question read as follows:

> (12) Produce any and all documents concerning complaints, lawsuits, reports or allegations of race and or/color discrimination (whether the complaint, report, or allegation was made verbally, in writing or by other means of communication, and whether it was internal or made to an external person or entity) regarding either or both of Defendants' Baltimore, Maryland restaurants, or any person(s) with immediate or successively higher supervisory authority over either such restaurant, at any time during the period January 1, 1997 to present.

> (17) Produce any and all documents related to any actions to correct alleged or potential race discrimination at Defendants' Baltimore, Maryland facilities undertaken by Defendant, or by any other person(s) or entity, at any time, including, but not limited to, complaint, disciplinary and/or investigation-related documents.

> Produce any and all point of sale and transactional data for Defendants'
> Baltimore, Maryland restaurants during the period January 1, 1992 to present,
> including but not limited to Rosnet, HSI, and Squirrel, as well as any and all
> documents describing such data systems and data fields, components and codes.

Defendants aver that they have produced some point-of-sale data.  However, EEOC contends that the point-of-sale data produced did not identify the table numbers corresponding to each order.   Defendants further submit that demanding documentation of every server table assignment for every meal served for ten years is "unduly burdensome and oppressive." Opp. at 6.

Although Defendants have not specified whether table assignments are stored in electronic or hard-copy format, producing records relating to each table assignment for each meal served in two restaurants for ten years could be a relatively burdensome task.  Moreover, while RFP No. 3 requests information about employee table assignments, and RFP No. 4 requests certain point-of-sale data, neither RFP specifically requests that point-of-sale data be provided on a per-table basis.  However, the parties have not provided any information regarding the precise capabilities of "Rosnet, HSI and Squirrel."  If any of those systems maintains point-of-sale data in combination with table assignments to servers, then EEOC's contention gains merit, and Defendants should permit EEOC to review the relevant data in electronic form.  If those systems do not maintain point-of-sale data in combination with table assignments to servers, then EEOC did not request the data in that format, and no further production is required.

### 4.      Employee punch-in/punch-out data

EEOC seeks, "employee punch-in/punch-out data regarding front-of-house employees at the two Baltimore restaurants and responsive .pdf files containing point-of-sale and punch-in/punch/out data."  Mot. at 3.  Once again, while certain point of sale information and work assignment data has been requested and produced, RFP Nos. 3 and 4 do not request punch-

in/punch-out data.   As a result, the motion to compel such data will be denied.

**5&6.   Electronic applications and related materials/Electronic versions of payroll alerts**

In its issues numbered 5 and 6, EEOC seeks, "[e]lectronically submitted employment applications, documents showing the race of job applicants (EEO-1 category data and tear-off sheets) and interview notes concerning front-of-house applicants for the two Baltimore restaurants" and "all electronic versions of 'Hourly Payroll Alert,' and EEO-1 data and tear-off sheets, as well as any hard copy documents not previously provided, concerning front-of-house applicants or employees of the two Baltimore restaurants."  Mot. at 3.  In response, Defendant avers that it has produced "several gigabytes of electronically stored information from M&S's personnel and payroll databases, along with hard-copy applications, interview notes, and applicant voluntary self-identification of EEO information (i.e., the "tear-off sheets")."  Opp. at 7.  This Court therefore does not understand where the dispute lies.  Because the information sought by EEOC is clearly responsive to RFP Nos. 1 and 2, if any such information has not been produced by Defendants, it needs to be produced. The sheer volume of information that has already been produced does not alter the requirement to produce all material responsive to the RFPs.  However, if all of the responsive information has already been produced in either hard-copy or electronic format (regardless of whether the original applications were submitted in hard-copy or electronically), Defendants do not need to re-produce identical information in another format.

Neither party has provided any information regarding the contents of the "Hourly Payroll Alert."  As a result, this Court is unable to determine whether or not it is responsive to RFP Nos. 1 and 2.  If the "Hourly Payroll Alert" has not been produced to date, the parties are ordered to confer and determine whether the "Hourly Payroll Alert" falls within the scope of the RFPs.

### 7.      Email inquiries into front-of-house employment

EEOC seeks, "[a]ll responses submitted to the two Baltimore restaurants' e-mail accounts or other electronic media from persons inquiring about front-of-house employment at the two Baltimore restaurants in response to website postings such as Defendants' website, Craigslist, Careerbuilder.com, Monster.com, or other internet postings."  Mot. at 3.  EEOC asserts that the materials are responsive to RFP Nos. 1, 2, and 21.  RFP Nos. 1 and 2 request information about applicants and employees, respectively.  If an email or electronic inquiry was received from a person who later became an applicant or an employee, and Defendants are able to retrieve that inquiry, then it falls within the information requested in RFP Nos. 1 and 2 and should be produced.  However, if an email or electronic inquiry came from an individual who did not subsequently apply for a position with either of the two Baltimore restaurants, then the email is not responsive to RFP Nos. 1 and 2, and it need not be produced.

### 8.      Email communications

EEOC seeks, "[e]mail communications responsive to EEOC's First Request for Production of Documents to Defendants, particularly those relating to applicants, hiring, complaints of racial discrimination, and server section assignments, all of which are responsive to document requests Nos. 1, 2, 3, 7, 11, 12, and 17."  Mot. at 4.[4]  Defendants aver that EEOC

---

[4] EEOC represents that, "In an attempt to speed the production of this data and to address Defendants' concerns, EEOC reduced its request for e-mails solely to those from persons with responsibility related to: 1) hiring, 2) recruitment, and 3) work assignments in Baltimore."  2008 Reply at 6.  EEOC attached a March 17, 2009 letter as an exhibit to that 2008 Reply.  That letter purportedly contains the EEOC's "reduced request."  However, the cited letter merely states, "it is highly likely that EEOC will propose some form of electronic production of email *en masse* that were sent or received by a relatively narrow range of management personnel with involvement in the hiring process or table/section/work assignments regarding the Baltimore restaurants."  2008 Reply Exh. 5 at 2.  Without specific identification of the precise employees whose email files should be searched, vague suggestions regarding ways to narrow the search only increase the likelihood of future disputes regarding the completeness of the productions.

has not provided a list of proposed search terms to winnow "potentially hundreds of thousands of pages of e-mail correspondence." Opp. at 8. Common practice governing the discovery of electronically stored information requires the use of search terms to make an extraordinarily burdensome search comply with the tenets of Fed.R.Civ.Proc. 26(b)(2)(C). If the producing party generates the search terms on its own, the inevitable result will be complaints that the search terms were inadequate. For that reason, this Court will require the parties to confer on the development of reasonable search terms to be used to obtain responsive email communications in this case. Within five days of the date of this order, EEOC is ordered to provide a list of proposed search terms to Defendants. If Defendants have any objections to EEOC's proposed search terms, Defendants are ordered to respond to EEOC within five days of the receipt of EEOC's list, and the parties will engage in good faith negotiations to attempt to agree on the parameters of the search. If the parties are unable to agree on a reasonable list of search terms following good faith negotiations, this Court will determine, after review of the parties' proposed lists and particularized information regarding the burden to be imposed by the proposed search, which terms will be used to allow Defendants to provide responsive email communications.

**9.    Personnel files**

EEOC seeks "personnel files of front-of-house management staff which will enable identification of persons with relevant knowledge and the potential substance and scope of their relevant knowledge and supervisory authority." Mot. at 4. The original RFP on which this request is based, No. 6, requested in relevant part "any and all documents related to any and all persons who held immediate or successively higher supervisory responsibility regarding either or both of Defendants' Baltimore, Maryland restaurants at any time during the period January 1, 1997 to present." Defendants respond by alleging that the request is vague and that they cannot

know which specific supervisors are relevant to the EEOC's request.  Opp. at 9.  This Court agrees with Defendants' position, because the phrase "immediate or successively higher supervisory responsibility" is unclear.  EEOC should identify specific managerial employees whose personnel files are sought, and Defendants should then produce those files in compliance with the terms of the governing confidentiality agreement.

### 10.    Supplemental production since 2009

EEOC seeks an update to a document production made by Defendants in 2009, which contained "certain key evidence, including but not limited to job applications, personnel files, payroll data, personnel data, EEO category identification forms regarding employees, and point-of-sale data."  Mot. at 4.  In response, Defendants contend that they "have already produced an abundance of these documents."  Opp. at 9.  Again, the quantity of documents produced to date does not eliminate the ongoing responsibility to supplement a document production with more recent responsive documents.  Defendants should update their original document production with the responsive documents from 2009 to the present.

### 11.    Prior data production in advance of ADR conference

EEOC seeks clarification as to whether the material produced by Defendants in advance of the ADR conference "is now to be considered document production for purposes of discovery in this matter, or, if instead, Defendants intend to make an entirely new data production."  Mot. at 4.  If the latter, EEOC requests that Defendants "be required to produce that data again to EEOC, as well as any other responsive data not previously produced."  Mot at 4.  In response, Defendants submit that the data produced in advance of the mediation was produced for the purposes of settlement negotiations only, and represent that they will produce "expert reports and underlying data in accordance with the new schedule to be entered by the Court."  Opp. at 7.

Simply requiring a party to "re-produce" all documents that were produced in the context of settlement negotiations would frustrate the public policy favoring the free exchange of information in the exploration of a mutually agreeable settlement.  If specific documents produced for the purposes of settlement negotiations are independently responsive to EEOC's RFPs, then they have to be produced as discovery.  Defendants' obligation to produce responsive documents in discovery is not erased simply by providing those documents in the context of settlement negotiations.  However, if the documents produced in the context of the settlement negotiations constituted informal "expert analysis," then Defendants need not re-produce those materials at all, and need not produce expert analysis until expert reports are due under the Court's scheduling order.

### 12.     Interrogatory No. 20

EEOC seeks a response to Interrogatory No. 20, which states, "Identify (by full name, date of birth, social security number, race, last known home address, last known home telephone number, last known cell phone number, job title(s) while employed by Defendants and corresponding dates, work locations, and dates of employment) any and all persons who created, selected for use, authorized and/or posted visual depictions of employees, applicants and/or persons posing as employees and/or applicants created for, or used for, Defendants' recruitment of candidates for employment at any time since January 1, 1997."  Defendants object to the breadth of the interrogatory and the burdensomeness of the response, due to the lack of geographic restrictions and length of time incorporated in the question.  In its 2008 Reply at 8, EEOC agreed to limit certain of its requests to advertisements and recruitment materials for the two Baltimore facilities and to nationwide advertising such as on an internet site.  It is unclear whether those agreed limitations were intended to pertain to Interrogatory No. 20.  However,

they should.   Defendants are ordered to respond to Interrogatory No. 20 with respect to visual depictions actually used for recruitment of candidates for employment for the two Baltimore restaurants and for national recruitment on Defendants' websites or in national publications.

SO ORDERED.

Dated:  <u>February 3, 2012</u>                        <u>          /s/                          </u>
                                                Stephanie A. Gallagher
                                                United States Magistrate Judge