FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP 1 2 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                           )
           **Plaintiff,** )      **Case No. WMN-08-CV-984**
                           )
**v.** )      **CONSENT DECREE**
                            )
**MCCORMICK & SCHMICK'S SEAFOOD** )
**RESTAURANTS, INC. and MCCORMICK &** )
**SCHMICK RESTAURANT CORPORATION,** )
                            )
           **Defendants.** )

## INTRODUCTION AND FINDINGS

On April 16, 2008, the U.S. Equal Employment Opportunity Commission ("Commission" or "EEOC") filed this action against Defendants McCormick & Schmick's Seafood Restaurants, Inc. and McCormick & Schmick Restaurant Corporation alleging that Defendants have engaged in a pattern or practice of race discrimination against Black job applicants and employees at their two Baltimore restaurants (formerly identified as Units 41 and 66) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). EEOC also alleged that Defendants engaged in racially discriminatory recruitment advertising in violation of Title VII. Defendants deny all allegations and assert that all relevant times they have maintained a diversified workforce.

The Parties acknowledge that Landry's, Inc.. purchased McCormick & Schmick's in 2012, three years after EEOC filed the present lawsuit and, therefore, Landry's, Inc. had no participation or role in any of the alleged events covered by the class claims period in this case, which ends in 2010.

EEOC and Defendants now desire to resolve this action and all claims asserted in EEOC's Complaint without the time and expenditure of contested litigation. McCormick & Schmick's believes that it has done nothing wrong and states that it fully supports equal opportunities for all employees, and in entering into the Consent Decree for its two Baltimore restaurants, acknowledges and agrees with the EEOC's mission to ensure legal compliance with hiring and recruitment practices. Accordingly, EEOC and Defendants have entered into this Consent Decree to resolve the EEOC's claims, to avoid the delay, costs and risks of further proceedings, and to promote and effectuate the purposes of Title VII.

The Court finds that it has jurisdiction over the subject matter of this action and the parties for purposes of the action, entry of the Consent Decree, and all proceedings related to the Consent Decree.

The Court, having examined the terms and provisions of the Consent Decree, further finds that it is reasonable and just in accordance with the Federal Rules of Civil Procedure and Title VII.

The Court further finds that entry of this Consent Decree will further the objectives of Title VII and will be in the best interests of the parties, those for whom the EEOC seeks relief, and the public. The Decree does not constitute an adjudication or finding on the merits, and the Parties agree that it cannot be used as evidence of liability, res judicata, or collateral estoppel in any other legal proceeding against Defendants.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

## DEFINITIONS

A.     "Defendants" means McCormick & Schmick's Seafood Restaurants, Inc., McCormick & Schmick Restaurant Corporation, and their predecessors, successors, assigns, and agents.

2

B.      "Commission" or "EEOC" is the U.S. Equal Employment Opportunity Commission, an agency of the United States Government.

C.      The term "hire" or "hiring" refers to the filling of a job opening with an individual who is new to the Company or is an employee of the company but new to the job title she or he has sought.

D.      "Eligible Claimants" or "Eligible Claimant" refers to (a) Black persons who sought employment with Defendants as a server, cocktail server, busser, hostess/host and/or bartender at either or both of the Defendants' restaurants located in Baltimore, Maryland at any time during the period January 1, 1998 and January 1, 2010 and (b) Black persons who were employed by Defendants in the positions of server, cocktail server, busser, hostess/host and/or bartender at either or both of the Defendants' restaurants located in Baltimore, Maryland at any time during the period January 1, 1998 and January 1, 2010.

E.      "Hiring authority" or "hiring authorities" refers to personnel of the Defendants or any third-party who participate in selection decisions related to screening, interviewing and/or hiring of job applicants, as well as any managerial personnel with a direct or successively higher supervisory role over such hiring authorities.

F.      "Day" or "days" means calendar days.

G.      "Best Efforts" means reasonable steps to comply with the specific objective identified.

H.      "Effective Date" - The Effective Date of this Decree is the date on which the Court gives final approval to the Decree.

I.      "Significant" when used in connection with statistical analyses or racial disparities refers to statistical significance as determined by a probability of .05 or lower that the disparity observed is a product of chance.

3

### GENERAL PROVISIONS AND COURT ENFORCEMENT POWERS

1.      This Decree constitutes full discharge and satisfaction of all claims which have been alleged in the Complaint filed in this Title VII action by the EEOC based on the Determination of the charge of discrimination filed by Cris Robinson.

2.      EEOC and Defendants shall bear their own attorney's fees and costs incurred in connection with this action.

3.      This Court shall retain jurisdiction to enforce the terms of this Decree and will have all available powers to enforce this Decree, including but not limited to monetary sanctions and injunctive relief.

3(a).   Release of Claims - In consideration of receiving any monetary award pursuant to this Consent Decree, all Claimants who receive Monetary Relief shall execute a Release in the form attached as Exhibit A.

3(b)    Complete Consent Decree - This Consent Decree constitutes the complete understanding among the Parties with respect to the matters herein.

3(c)    Severability - If one or more provisions of this Consent Decree are rendered unlawful or unenforceable by act of Congress or by decision of the United States Supreme Court, the Parties shall attempt to agree upon what amendments to this Consent Decree, if any, are appropriate to effectuate the purposes of this Consent Decree.  In any event, the unaffected provisions will remain enforceable.

3(d)    No Admission of Liability - Neither this Consent Decree nor any order approving this Consent Decree is or shall be construed as an admission by Defendants of the truth of any allegation or the validity of any allegation asserted in this civil action or of Defendants' liability therefore, nor as a concession or an admission of any fault or omission of any act or failure to act by Defendants.  This Consent Decree was entered into for settlement purposes only, and shall not

4

be construed by anyone for any purpose whatsoever as an admission or presumption of any wrongdoing on the part of Defendants, nor as an admission by any Party to this Consent Decree that the consideration to be given hereunder represents the relief which could have been recovered after trial.

3(e)   No Third Party Rights - Nothing in this Consent Decree shall be deemed to create any rights on the part of Non-Parties to enforce this Consent Decree.  The right to seek enforcement of this Consent Decree is vested exclusively in the Parties.

3(f).   Failure To Obtain Approval Of Consent Decree – In the event this Consent Decree does not become final or effective in its current form (for whatever reason), this entire Consent Decree shall become null and void and of no force or effect.

3(g)   Intent of Parties and Effect of Compliance with Consent Decree - It is the intent of the Parties that by virtue of the consideration agreed to herein by Defendants, this Consent Decree resolves the above-captioned civil action.

## GEOGRAPHIC SCOPE AND DURATION OF DECREE

4.   This Decree shall only apply to Defendants' restaurants that were formerly assigned Unit Nos. 41 and 66 and all business operations related to such restaurants.  However, with regard to Paragraph Nos. 7, 26 & 33(g), below, this Decree shall apply to all of Defendants' facilities and business operations nationwide.

5.   This Decree shall remain in effect for two (2) years subsequent to the Effective Date.

## PROHIBITED DISCRIMINATION AND RETALIATION

6.   During the operation of this Consent Decree, Defendants shall comply with Title VII and refrain from engaging in any employment practice that discriminates against their job applicants and employees on the basis of race in violation of Title VII, including, (a) subjecting Black job applicants to discrimination in recruiting or hiring because of their race; and (b) subjecting Black

5

employees to discriminatory or unequal table, section or other work assignments because of their race.

7.      During the operation of this Consent Decree, Defendants shall comply with Title VII and refrain from printing or publishing, or causing to be printed or published, any notice or advertisement relating to employment that indicates a preference, limitation, specification and discrimination based on race in violation of Title VII, including notices and advertisements regarding career opportunities posted on any website by or for Defendants that express a preference, limitation, specification or discrimination because of race.

8.      During the operation of this Consent Decree, Defendants shall comply with Title VII and refrain from engaging in any employment practice that discriminates against any of their employees or job applicants who oppose any practice made unlawful by Title VII. Defendants shall not retaliate against any job applicant, employee or other person because he or she made a charge, or participated, testified or assisted the Commission in any manner in this matter, or sought or received relief in this action, the administrative proceedings preceding this action, or in any other proceeding under Title VII.

MONETARY RELIEF

9.      Within thirty (30) days of entry of this Decree, Defendants shall pay $1,300,000.00 in monetary relief into a Qualified Settlement Fund ("QSF") to be established and administered by the EEOC as discussed below. Of this amount, 50% shall constitute back pay with interest and the remaining 50% shall constitute statutory damages under 42 U.S.C. Section 1981a payable to Eligible Claimants who applied or were employed at any time during the period January 1, 1998 until January 1, 2010.   Defendants shall notify EEOC after they have completed payment into the QSF.

10.     Distribution of monetary relief to EEOC's Eligible Claimants shall be made by the Administrator in accordance with a claims process to be conducted by, and eligibility criteria to be determined by, the EEOC. All distributions of monetary relief to and among Eligible Claimants will be determined by the EEOC. Defendants shall not have any participation or role in determining the identities of Eligible Claimants or amounts payable to such persons.

11.     EEOC shall use the following minimum criteria to identify persons to receive monetary awards regarding its hiring discrimination claim: persons who (a) are Black; (b) sought employment with Defendants at either or both their Baltimore restaurants at any time during the period January 1, 1998 until January 1, 2010; (c) sought employment as a server, cocktail server, host/hostess, busser and/or bartender, or circumstances demonstrate to EEOC that they were otherwise considered by Defendants as potential candidates for those positions; (d) were of legal age to work in the position(s) in question; and (e) were not selected for those positions by Defendants. In addition, in determining back pay award amounts EEOC will consider dates of application and subsequent employment history.

12.     EEOC shall use the following minimum eligibility criteria to identify persons to receive monetary awards regarding its work assignments discrimination claim: persons who (a) are Black; (b) were employed by Defendants at either or both their Baltimore restaurants at any time during the period January 1, 1998 until January 1, 2010; and (c) held one or more positions as a server, cocktail server, bartender, and/or host/hostess.

13.     Defendants shall be responsible for paying their share of all applicable payroll taxes (e.g., FICA).

13(a).  The total amount of payments to Eligible Claimants shall not exceed the amount in the Qualified Settlement Fund.

7

14.    EEOC shall have twenty-two (22) months after entry of this Decree within which payments may be made to Eligible Claimants from the QSF.  EEOC shall be afforded an additional sixty (60) days after the expiration of the twenty-two month claimant payment period within which it may designate an organization to be the recipient of any residual amounts.

## CLAIMS ADMINISTRATOR

15.    The QSF, and payments made from the QSF, shall be administered by the settlement claims administrator ("Administrator"), which shall be Gilardi & Co. LLC, a qualified third-party settlement administrator that was selected by EEOC and Defendants prior to entry of this Decree.  Upon entry of this Decree, the Administrator shall commence its duties in accordance with this Decree and instructions received from the Parties.  If either Party determines that the Administrator cannot perform its duties in a proficient manner or at reasonable cost in light of the work required to be performed under this Decree, the rates quoted by the Administrator prior to entry of this Decree, and the availability of other potential Administrators that may be more cost-effective, that Party may file a motion with the Court for the appointment of a new Administrator.  Prior to filing such motion, the moving Party shall confer with the non-moving Party in a good faith effort to identify a new Administrator satisfactory to both parties for presentation to the Court.

16.    The Administrator shall be responsible for the following:

    (a)    establishing the QSF

    (b)    issuing payment to Eligible Claimants from the QSF in amounts determined by the EEOC;

    (c)    keeping records of such payments and reporting them;

    (d)    making necessary payroll tax withholdings; and

    (e)    issuing necessary tax documents.

8

17.     The EEOC shall receive no monetary amount from the QSF Account.  Payment of the Administrator will be made from interest earned on the Settlement Funds in the QSF Account.  To the extent the interest is insufficient to cover these costs, Defendants shall pay all expenses of the Administrator (or any subsequently appointed Administrator) incurred in the course of carrying out its duties under the Decree upon to an amount that shall not exceed a total of $150,000 for the Administrator's work under this Decree as well as the administration of the settlement fund regarding the Conciliation Agreement resolving EEOC San Francisco District Office Charge No. 550-2006-02139.  In the event that the cost of services required to administer the QSF in this litigation will exceed the aforementioned amount, the parties shall promptly confer in good faith concerning a joint proposal to the Court for completing the QSF administration.

18.     The Administrator shall promptly inform Defendants of the amounts of back pay distributed to each Eligible Claimant from the QSF and all other information necessary for Defendants to satisfy their payroll tax liabilities no later than thirty (30) days before any distribution.

18(a).  Defendants shall provide the EEOC with all information and documents necessary to carry out its functions, including information to enable the EEOC to make payroll tax withholdings. Prior to entry of this Decree, Defendants have provided EEOC with applicant and payroll records in its possession for dates up to and including January 1, 2010, to enable EEOC to conduct the claimant claims process.  Defendants will cooperate with requests for further relevant information from EEOC that is reasonably accessible and within its possession in order to determine Eligible Claimants and award amounts.

18(b).  Defendants shall be responsible for satisfying their own payroll tax obligations associated with payment of back pay.  The process for Defendants to satisfy their payroll tax obligations is

9

as follows: Defendants shall remit to the QSF all monetary amounts equal to their payroll tax liability for back pay awards based on the back pay awards to be distributed by the Administrator to Eligible Claimants and reported to Defendants pursuant to Paragraph 18. Defendants shall remit such monetary amounts not later than thirty (30) days after receiving notification of back pay amounts from the Administrator pursuant to Paragraph 18. Such monetary amounts shall be used only for satisfying Defendants' payroll tax liability. Such payroll taxes shall then be timely paid by the Administrator under the Taxpayer Identification Number for the QSF.

## INTERNAL DECREE COMPLIANCE MONITORING OFFICIAL

19.     Defendants shall designate a Decree Compliance Monitor ("DCM"), who shall be an officer or high-level management official of the Defendants who shall possess the knowledge, capability, organizational authority, and resources to monitor and ensure Defendants' compliance with the terms of the Consent Decree. Prior to her/his selection, the DCM shall have a reasonable base of knowledge regarding equal employment opportunity law and human resource management. Defendants shall assign to the DCM the responsibility of monitoring and ensuring Decree compliance and shall further hold the DCM accountable for carrying out his or her responsibilities as DCM. Defendants shall ensure that the DCM receives all training and assistance necessary to carry out her/his duties in a proficient manner. To the extent the DCM requires technical assistance to enable her/him to proficiently perform a specific function (e.g., statistical analysis expertise) Defendants shall ensure that such assistance is provided by their own qualified personnel or, in the alternative, third-party consultants (e.g., labor economist, statistician, industrial/organizational psychologist, attorney). If Defendants have notice that the DCM is unable or unwilling to proficiently perform his/her assigned responsibility, or the DCM is no longer employed by Defendants, they shall identify and assign a new DCM within ten (10) days of such notice.

20.    Defendants shall provide written notice to EEOC within ten (10) days of entry of this

Decree of the full name, job title, work experience, and education/training history (including but

not limited to all equal employment opportunity and human resource education/training) of the

DCM required by this Decree, and within ten (10) days of the appointment of any new DCM

required by this Decree. Written notice shall be provided to EEOC Supervisory Trial Attorney

Ronald L. Phillips at the EEOC's Baltimore Field Office.

## OFFERS OF EMPLOYMENT TO ELIGIBLE CLAIMANTS

21.    In the event that one or more qualified Eligible Claimants chooses to complete an

application for a vacant position with Defendants at either of the two Baltimore restaurants

(formerly designated Unit #41 & #66) during the two-year operation of this Decree, Defendants

shall offer the position to the applicant/Eligible Claimant if the applicant/Eligible Claimant

possesses all lawful, objective qualifications for the position, including scheduling and

availability requirements, unless another applicant is better qualified for the position.  In the

event Defendants do not offer a vacant position to an applicant/Eligible Claimant who applied

for the position, they shall within sixty (60) days provide a written notice to EEOC identifying

the reason(s) for not offering the position to that individual.  Defendants shall not be required to

make more than twenty (20) preferential offers of vacant positions under this Paragraph.

Defendants' responsibilities under this Paragraph shall only arise if (i) an Eligible Claimant has

applied for a vacant position covered by this Decree and (ii) Defendants are promptly notified by

EEOC, in writing, that a particular Eligible Claimant has submitted an application for

employment at either of the two restaurants and identifying the name, last known address, and

last known telephone number of the Eligible Claimant; the restaurant to which they applied, and

the vacant position sought.  Such notice shall not be considered prompt unless submitted to

Defendants (via counsel) sufficiently in advance of the hiring decision regarding the vacant position to feasibly permit Defendants to consider the Eligible Claimant's application.

## NUMERICAL HIRING GOALS
## AND RECRUITING EFFORTS

22.   Defendants shall, for a period of two (2) years, implement the following provisions related to hiring of persons for the job titles of server, cocktail server, host/hostess, busser and bartender at the two Baltimore facilities:

(a)   Numerical Hiring Goals:   Defendant shall make Best Efforts to ensure that the percentage of persons hired to fill vacancies in each of the aforementioned job titles who are Black is equal to or exceeds the percentage of Black persons applying for such job titles for each 12-month reporting period who possess all lawful, objective qualifications, including scheduling and availability requirements.

(b)   Recruiting Efforts:   In order to encourage a diverse pool of qualified applicants, Defendants shall advertise vacancies and employment opportunities available at the two Baltimore restaurants through submitting notices of employment opportunities and vacancies to three Baltimore City One-Stop Job Centers; at least one hospitality industry training program located in the City of Baltimore; Coppin State University, Morgan State University, Baltimore City Community College, The University of Baltimore, and Sojourner-Douglass College, to the extent that they accept job announcements from employers for student jobs; and at least one internet job posting site that advertises food service positions in the City of Baltimore (as well as other locations).

(c)   Applicant Tracking System: Defendants shall adopt and maintain a tracking system which shall contain, for each person hired and for any other person

who submitted to Defendants an application, at least the following information: (i) full name; (ii) job title sought and/or for which considered; (iii) date of application/; (iv) particular restaurant of position sought and/or for which considered (if applicable);; (v) race; (vi) date of hire (if applicable); (vii) job title at time of hire (if applicable); (viii) work location/job site assigned (if applicable); (ix) reason for non-selection (if applicable); (x) whether position is full-time or part-time. Regarding race information, Defendants shall gather such information using means that are non-coercive and otherwise consistent with Title VII, such as voluntary applicant race surveys or, if warranted, visual identification of race.

(d)     Goal Attainment Review: Defendants, acting through the DCM, shall conduct an annual review of their Numerical Hiring Goals attainment and Recruiting Efforts. At a minimum, such review shall be based on an analysis of data gathered pursuant to the Decree, any feedback regarding the Numerical Hiring Goals and Recruiting Efforts from its personnel, as well as any complaints, reports or allegations of discrimination or non-compliance with the Decree and investigations thereof. Subjects to be assessed during the review shall include at least the following: (i) Defendants' progress in achieving the Numerical Hiring Goals and Recruiting Efforts for Black candidates set forth in this Decree; and (ii) a determination of what steps could potentially remedy any failure to achieve Numerical Hiring Goals.  Defendants shall prepare an annual report summarizing the results of such review.

(e)     Critical Assessment of Goal Non-Attainment:  When one or both of the two Baltimore facilities have failed to achieve the Numerical Hiring Goals for

Black candidates set forth in the Decree, Defendants shall conduct a review of those restaurants to determine the reasons for non-achievement of the goals.   For each such restaurant, such review shall include, at a minimum, the following:  (1) comparison of applicant flow data to hiring data to determine whether a statistical under-representation of Black hires exists for that restaurant; (ii) a determination of whether any statistical under-representation of Black hires in light of applicant flow data is statistically significant; (iii) a review of records to assess whether any allegations of possible race discrimination have been made regarding the restaurants or hiring authorities as well as the results of any investigations of possible race discrimination have been made regarding the restaurants or hiring authorities; (iv) interviews of the hiring authorities in question, as well as applicants and employees as reasonably warranted; (v) a review of recruiting techniques and procedures (including but not limited to advertising) that were used to solicit candidates for that restaurant; and (vi) where a determination has been made that any statistical under-representation of Black hires is statistically significant, audits of all hiring decisions made in the preceding year by the hiring authorities in question, including requiring the hiring authorities in question to articulate their reasons for non-selection of all Black candidates who were not hired and a review of the veracity of those reasons by comparison with non-Black selectees and/or by other means reasonably necessary under the circumstances to assess veracity.

(f)      Reporting to the EEOC:  Defendants shall report to EEOC the following information pertaining to each twelve-month period covered by the Decree: (i) a summary setting forth, separately for each restaurant, the total number of applicants

for each server, cocktail server, host/hostess, busser and bartender position who possess all lawful, objective qualifications and, within each job title, the total number of applicants of each race who possess all lawful, objective qualifications; (ii) a summary setting forth, separately for each restaurant, the total number of new hires for each job title and, within each job title, the total number of new hires of each race; (iii) a summary setting forth, separately for each restaurant, the number of employees of each race who were discharged and laid-off; (iv) a summary setting forth, separately for each restaurant, the total number of applicants for each server, cocktail server, host/hostess, busser and bartender position regardless of qualifications and, within each job title, the total number of applicants of each race regardless of qualifications; and (v) if Defendants have not achieved any Numerical Hiring Goals, a detailed narrative explanation of the steps taken to assess why the goal was not met, the reasons that Defendants believe they did not achieve the goal, the measures Defendants intend to undertake to achieve the Numerical Hiring Goals and the timetable for implementing those measures.  Such reports shall be submitted within sixty (60) days of the end of each twelve-month period. Defendants shall take appropriate disciplinary action, up to and including discharge as warranted, against any hiring authority found to have engaged in purposeful race discrimination in violation of Title VII and this Decree or who willfully fails to assist Defendants in their lawful efforts to comply with this Consent Decree.

## WORK ASSIGNMENT COMPLIANCE ASSESSMENT

23.   Defendants shall implement the following provisions related to table, section, and other work assignments for employees holding the position of server:

Work Assignment Tracking System:   Defendants shall adopt and maintain a work assignment tracking system which shall contain, for each server, at least the following information: (i) full name; (ii) dates of employment; (iii) restaurant; (iv) shift hours for each work day (clock in and clock out times and total hours worked); (v) table and section assignments in each shift worked; (vi) base pay per hour; and (vii) total sales per shift;

24.     Defendants, acting through the DCM, shall conduct an annual review of work assignments for servers to determine if any statistically significant racial disparities exist concerning compensation.   If a statistically significant racial disparity is found affecting compensation, Defendants will prepare a narrative explanation of the steps taken to assess the reasons for the disparity, any measures Defendants intend to undertake to remedy the disparity, and if no measures are contemplated, the reasons for that position. .

25.     Reporting to EEOC:   Each year during the operation of this Decree, Defendants shall provide EEOC with a copy of its annual review of work assignments.   Such reports shall by submitted within sixty (60) days of the end of each twelve-month period.

## ADVERTISING COMPLIANCE ASSESSMENT

26.     Defendants, acting through the DCM, shall review all job advertisements and notices, including but not limited to website materials and visual depictions purporting to be employees or applicants, prior to their printing or publication to ensure that such advertisements and notices do not violate 42 U.S.C. § 2000e-3(b) with regard to race and color discrimination.

## DISCRIMINATION PREVENTION MEASURES: COMPLAINT PROCESS

27.     Throughout the duration of this Decree, and as it relates to facilities covered by this Decree, Defendants shall continue to implement and adhere to an internal complaint system (which may include the use of an internal hotline) that is substantially equivalent to that which was established in Section XV of the Consent Decree entered by the U.S. District Court for the

Northern District of California in the matter of *Wynne, et. al. v. McCormick & Schmick's Seafood Restaurants, Inc., et al.,* Case No. 4:06-cv-03153-CW (Document No. 113).

## DISCRIMINATION PREVENTION MEASURES:
## DECREE COMPLIANCE AND OTHER EEO TRAINING

28.     Defendants will provide sufficient training from any necessary source to enable the DCM to proficiently perform his/her duties under this Decree, including initial training to the DCM concerning all contents of this Consent Decree; Defendants' Numerical Hiring Goals; their obligation to achieve those Goals; potential consequences of failure to achieve the Goals; the Applicant Tracking System and all record-retention requirements of this Decree; the role of Defendants, the DCM, EEOC, and the Court in monitoring Decree compliance; the requirements of Title VII, including but not limited to non-discrimination in hiring, work assignments, and advertising; basic statistical analysis concepts in employment cases; and EEO complaint investigations. In addition, to the extent the DCM is not reasonably familiar with Defendants' restaurant operations, Defendants shall provide such training as is required to enable the DCM to possess such familiarity. All DCM training (except regarding restaurant operations) shall be provided by Defendants' counsel of record in this case and any necessary adjuncts. Within thirty (30) days of the DCM's receipt of such training, his/her name and title and all written materials from the training shall be submitted to EEOC counsel of record for review.

29.     Defendants will provide not less than one (1) hour of training to all current human resources personnel and all current hiring authorities with responsibility for the locations covered by this Decree concerning the content of this Consent Decree; Defendants' Numerical Hiring Goals; their obligation to achieve those Goals; potential consequences of failure to achieve the Goals; the Applicant Tracking System and record-retention requirements of this Decree; and the role of Defendants, the DCM, EEOC, and the Court in monitoring Decree compliance. All

17

training described in this Paragraph shall be provided by Defendants' counsel of record in this case and any necessary adjuncts. Within thirty (30) days of such training, a list of the names, job titles, and work locations of attendees and all written materials from the training shall be submitted to EEOC counsel of record for review.

30.     Defendants shall ensure that the DCM and all personnel whose duties require them to conduct investigations of race discrimination/harassment complaints are reasonably qualified by experience, education, and training to perform those duties. Defendants shall require such persons to attend a reasonable quantum of professional development training annually concerning equal employment opportunity and EEO investigations.

### REPORTS TO EEOC OF DISCRIMINATION ALLEGATIONS AND WITNESSED CONDUCT

31.     Defendants shall submit an annual written report to the Commission regarding all written, or electronic complaints of potential race discrimination against Black job applicants or employees made to its internal complaint system, to any person with managerial and/or supervisory authority, or to any person designated by Defendants to receive such complaints, whether sufficient to state an actionable claim under Title VII or not, and any action taken in response to the complaints.   Such reports shall by submitted within sixty (60) days of the end of each twelve month period.

32.     Such reports shall contain the following:

  (a)     a narrative of the circumstances of the complaint or acquired knowledge;

  (b)     the dates of the alleged complained-of discriminatory conduct;

  (c)     the allegations of race discrimination and the facts known and/or alleged that are relevant to such complaint;

(d)     the full name, job title, work address, last known home address, and last known home telephone number of any complainant;

(e)     the full name, job title and last known work address of any persons who actually received the complaint; if other than the complainant, the full name, job title, work address, last known home address, and last known home telephone number of any person alleged by a complainant to have been a victim of discrimination and;

(f)     the full name (if available), job title, and work address of any known or alleged witnesses to the incidents alleged by a complainant or reported by a person with managerial and/or supervisory authority.

<u>RECORD-RETENTION REQUIREMENTS</u>

33.     For the duration of this Decree, Defendants shall retain the following documents relative to the two Baltimore restaurants previously known as Units 41 and 66:

(a)     Any and all applications, resumes, cover letters, interview notes, recorded ratings, and any and all other documents related to recruitment, pre-screening and/or hiring that were otherwise received or generated by Defendants;

(b)     Personnel, payroll, and point-of-sale data;

(c)     Data related to table, section, shift or other work assignments;

(d)     Data, reports or documents required to be created or compiled in accordance with this Decree;

(e)     Personnel files;

(f)     Any and all non-privileged documents created or compiled by the DCM or any persons assisting the DCM in performing his/her duties

(g)     Copies of all newspaper, internet or other advertisements for employment;

19

    (h)      All written complaints or reports of potential race discrimination against Black job applicants or employees; and

    (i)      All training materials and listings of attendees required by this Decree.

34.    Defendants will retain, and provide to EEOC as soon as practicable upon demand, any and all documents or data made or kept under the Decree

35.    Defendants shall comply with all applicable record-keeping requirements of Title VII and the Commission's regulations, including but not limited to, 29 C.F.R. Parts 1602 and 1607.

SUBMISSION OF REPORTS AND NOTICES TO EEOC

36.    All notifications and reports required under this Decree shall be made in writing and shall be sufficient if hand-delivered or sent by express or regular mail to Ronald L. Phillips, Supervisory Trial Attorney, U.S. Equal Employment Opportunity Commission, Baltimore Field Office, 10 South Howard Street, 3rd Floor, Baltimore, MD 21201. All reports shall be verified by oath or under penalty of perjury.

DISPUTE RESOLUTION AND COMPLIANCE

37.    Upon motion of the Commission, this Court may schedule a hearing for the purpose of reviewing compliance with this Consent Decree. Prior to such motion, the Commission shall notify Defendants, in writing, of the alleged non-compliance. Upon receipt of written notice, Defendants shall have ninety (90) days to either correct the alleged violation, and so inform the Commission, or deny the alleged violation, in writing;

    (a)      If the parties remain in dispute they shall attempt in good faith to resolve their dispute;

    (b)      If the parties cannot resolve their dispute in good faith, the Commission may file a motion with the Court seeking remedies for the alleged noncompliance

and for Defendants to show cause why they should not be found in violation of the Decree;

(c)   Each party shall bear its own costs, expenses and attorney's fees incurred in connection with such motion; and

(d)   Jurisdiction to resolve any dispute arising under this Decree resides in the United States District Court for the District of Maryland.

38.   EEOC shall be authorized to move for a compliance review hearing prior to expiration of the 90-day period set forth in Paragraph 37 above, if it demonstrates to the Court the presence of exigent circumstances warranting earlier intervention.

39.   In the event that a remaining dispute exists as of the date this Decree expires, the duration of the Decree shall be automatically extended until final disposition of the existing dispute, or up to six (6) months, whichever is earliest. A dispute shall be deemed to exist on the date that the Decree expires if (a) it is an unresolved dispute set forth in a written notice of alleged Decree non-compliance that was served by the EEOC upon the Defendants (via counsel) on or before the expiration date of the Decree or (b) it is an unresolved dispute based on any final annual report required to be served by Defendants that is set forth in a written notice of Decree non-compliance served by the EEOC upon Defendants not later than sixty (60) days after EEOC's receipt of the relevant report(s).

40.   If the Commission has a reasonable, good faith and articulable suspicion that Defendants have or are engaging in race discrimination at the restaurants covered by this Decree in violation of Title VII or have otherwise failed to comply with this Decree, the Commission may conduct on-site inspection of Defendants' Baltimore restaurants to ensure compliance with Title VII and any of the terms of this Decree. Such inspection may include requests for inspection of relevant

documents; ex parte interviews with non-managerial employees; interviews of managerial employees; and/or inspection of any area within the restaurants.   In order to obtain such inspection, EEOC must first seek Defendants' voluntary cooperation by submitting a written request to Defendants (via counsel) at least 14 days in advance of the EEOC's requested inspection, which shall include the EEOC's reasonable, good faith and articulable suspicion.   If Defendants deny or otherwise fail to respond to the EEOC's request for voluntary cooperation, EEOC may file a motion with the Court to require Defendants to comply with its inspection requests and any other compliance review measures as deemed appropriate by the Court to ensure compliance with any terms of this Decree, subject to Defendants objection based on EEOC's failure to provide reasonable, good-faith and articulable suspicion that Defendants have or are engaging in race discrimination at the restaurants covered by this Decree in violation of Title VII or have otherwise failed to comply with this Decree.

### MISCELLANEOUS PROVISIONS

41(a).  Joint Document Of The Parties - The terms of this Consent Decree are the product of joint negotiation and are not to be construed as having been authored by one party or another.

41(b).  Limited Applicability to New Hires - All eligible employees hired by Defendants after the Effective Date of this Consent Decree, may avail themselves of the non-monetary relief portions of the Consent Decree but may not avail themselves of the monetary relief provisions in Paragraph 9 unless they had previously been employed by Defendants or applied for employment with Defendants at the locations set forth herein between January 1, 1998 and the January 1, 2010.

41(c).  Amendment and Modification of Consent Decree - By mutual consent of the Parties, this Consent Decree may be amended in the interest of justice and fairness in order to execute the provisions involved.  Should any Party determine that modification, additions, or deletions to this

22

Consent Decree are necessary, the counsel for the Parties shall meet in good faith and on reasonable notice to discuss any such changes.  No modification, deletion, or addition to this Consent Decree shall be adopted unless it is agreed upon in writing, signed by the Parties, and so ordered by the Court.

41(d).  Implementation - The Commission and Defendants agree to take all steps that may be necessary to fully effectuate the terms of this Consent Decree.

**IT IS AGREED:**

[remainder of page intentionally left blank]

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

_____ For
DEBRA M. LAWRENCE
Regional Attorney
EEOC-Philadelphia District Office
(including Baltimore Field Office)
City Crescent Building, 3rd Floor
10 S. Howard St.
Baltimore, MD 21201
Office #: (410) 209-2734
Facsimile #: (410) 962-4270

Dated: 9/2/14

_____
RONALD L. PHILLIPS
Supervisory Trial Attorney
EEOC-Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, MD 21201
Office #: (410) 209-2737
Facsimile #: (410) 962-4270

Dated: 9/2/14

_____ For
JOHN A. HENDERSON
DEBORAH A. KANE
PHILIP KOVNAT
Trial Attorneys
EEOC-Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, MD 21201
Office #: (410) 209-2246
Facsimile #: (410) 962-4270

Dated: 9/2/14

MCCORMICK & SCHMICK'S SEAFOOD
RESTAURANTS, INC. AND MCCORMICK
AND SCHMICK RESTAURANT
CORPORATION

_____
GERALD L. MAATMAN, JR.
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
Office #: (312) 460-5965
Facsimile #: (312) 460-7965
gmaatman@seyfarth.com

Dated: 8-19-2014

ERIC J. JANSON
Seyfarth Shaw LLP
975 F Street NW
Washington, D.C. 20004
Office #: (202) 463-2400
Facsimile #: (202) 828-5393
ejanson@seyfarth.com

Dated: _____

Attorneys for Defendants

_____
STEVEN SCHEINTHAL
Corporate representative for Defendants

Dated: 8-19-2014

24

**IT IS SO ORDERED:**

_9/10/14_
Dated

_____
HONORABLE WILLIAM M. NICKERSON
Senior United States District Judge

**Exhibit A**

### RELEASE AGREEMENT ("Release")

**Release and Satisfaction of Claims.**  In consideration for the $\_\_\_,000 paid to me by McCormick & Schmick's Seafood Restaurants, Inc. in connection with the resolution of the lawsuit styled *EEOC v. McCormick and Schmick's Seafood Restaurants, Inc. & McCormick and Schmick Restaurant Corporation,* Case No. WMN-08-CV-984 (District of Maryland), I waive, release and discharge, and covenant not to sue, McCormick & Schmick's Seafood Restaurants Inc. and McCormick and Schmick Restaurant Corporation, or any of its past, present, and future direct and indirect parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, affiliated organizations, insurers, assigns, and each of its past, present, and future officers, directors, members, trustees, agents, employees, attorneys, contractors, representatives, and any other persons or entities acting on their behalf (the "Releasees") for any claims of race discrimination arising under Title VII of the Civil Rights Act of 1964, as amended that are the subject of the above-styled and numbered lawsuit and that I have or may have had against the Releasees and/or any of them on or before the date of this Release.

_____      X_____
Date                                          Name

Mailing Address
Name:
Street Number:
City, State, Zip Code